JUDGE FRANK MONTALVO

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED

2022 OCT 31  PM 2: 27

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

|  |  |
|---|---|
| **BRANDON CALLIER,** | § |
|  | § |
|  | § |
| **Plaintiff,** | § |
|  | § |
| v. | § |
|  | § |
| **JUMPSTART FINANCIAL, LLC,** a Texas | § |
| Limited Liability Company, **JACK SEIGLER,** | § |
| **ARNOLD & SMITH LAW, PLLC,** an Oklahoma | § |
| Professional Limited Liability Company, and | § |
| **DENNIS SMITH** | § |
|  | § |
|  | § |
| **Defendants.** | § |
|  | § |

# EP22CV0399

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, BRANDON CALLIER, brings this action against Defendants, JUMPSTART FINANCIAL, LLC, JACK SEIGLER, ARNOLD & SMITH LAW, PLLC, and DENNIS SMITH and alleges based on personal knowledge and information, and belief, as follows:

## PRELIMINARY STATEMENT:

**1.**     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

**2.**     Plaintiff Brandon Callier ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants JUMPSTART

FINANCIAL, LLC, JACK SEIGLER, ARNOLD & SMITH LAW, PLLC, and DENNIS SMITH sent a series of telemarketing calls for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

3.     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## PARTIES:

4.     Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, who resides in El Paso, Texas, and is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Texas during the calls, in this case in El Paso County, Texas.

5.     Defendant JUMPSTART FINANCIAL, LLC ("Jumpstart") is a limited liability company organized and existing under the laws of Texas, with a principal place of business at 9595 Six Pines Drive, STE 8210, The Woodlands, TX 77830 and can be served via registered agent Frazer Law, P.C., 25511 Budde Road, STE 2801, The Woodlands, TX 77380. Jumpstart markets and sells, inter alia, debt relief services on behalf of law firms, and engages in telemarketing into this district, as it did with the Plaintiff.

6.     Defendant JACK SEIGLER ("Seigler") is an adult individual, founder, and managing officer of Jumpstart Financial, LLC, and can be served at 19 Regent SQ, Spring, TX 77381.

7.     Defendant Arnold & Smith Law, PLLC (A&S) is a professional limited liability company organized and existing under the laws of Oklahoma, with a principal address of 115 East California Ave, Oklahoma City, OK, and can be served via registered agent Arnold & Smith Law, PLLC, 115 East California Ave, Oklahoma City, OK 73104.

2

**8.**      Defendant DENNIS J. SMITH ("Smith") is an adult individual, founder, and managing member of Arnold and Smith, PLLC and can be served at his principal place of business at 115 East California Ave, Oklahoma City, OK 73104.

**9.**      Defendants Jumpstart, Seigler, A&S, and Smith are hereinafter collectively referred together as "Defendants".

## JURISDICTION AND VENUE

**10.**      **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's.*, *LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

**11.**      **Personal Jurisdiction**. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents they sell goods and services to Texas residents, including the Plaintiff.   Defendants Seigler and Jumpstart are both Texas Residents.  Defendants A&S and Smith provide legal services to Texas residents and perform those services in Texas Courts.

**12.**      **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including the Plaintiff occurred in this District and because the Plaintiff was residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

## Statutory Background

3

## The Telephone Consumer Protection Act

**13.** In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

**14.** The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

**15.** The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

**16.** According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**17.** The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

4

18.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded

telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it

ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on behalf
> of a specific seller; and (2) having received this information, agrees unambiguously
> to receive such calls at a telephone number the consumer designates.[] In addition,
> the written agreement must be obtained "without requiring, directly or indirectly,
> that the agreement be executed as a condition of purchasing any good or service.[]"
> In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of
> 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

19.     The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database

administrator." Id.

20.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

21.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission**

**Telemarketing Calls**

**22.**     Under the TCPA, an individual such as Mr. Seigler and Mr. Smith may be personally

liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which

reads, *inter alia*:

> [T]he act, omission, or failure of any agent, or other person acting for or employed by any
> common carrier or user, acting within the scope of his employment, shall in every case be
> deemed to be the act, omission, or failure of such carrier or user *as well as of that person*. 47
> U.S.C. § 217 (emphasis added).

**23.**     When considering individual officer liability, other Courts have agreed that a corporate

officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g.,*

*Jackson's Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich.

Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for

violating the TCPA "where they 'had direct, personal participation in or personally authorized

the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp.

2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid

individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

**24.**     The Texas Business and Commerce code requires sellers to obtain a registration

certificate from the Secretary of State in order to make telephone solicitations inside the state of

Texas or to residents located in the state of Texas.

**25.**     The Plaintiff may seek damages for violations of Texas Business and Commerce Code §

302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs,

investigation costs, depositions expenses, witness fees, and attorney's fees.

**26.**     Texas Business and Commerce Code § 302.101 provides a private right of action. A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §302.303.

## FACTUAL ALLEGATIONS

27.     Defendants provide debt relief services to people in Texas and nationwide.

28.     Defendants routinely violate the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

29.     At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with a phone number ending in 4604.

30.     At all times material hereto, Plaintiff was the subscriber of the telephone number ending in 4604 and pays his cell phone bill through Verizon.

31.     Plaintiff's phone number is his private cell phone number.

32.     Plaintiff's phone number is registered with Verizon as his personal telephone number and not as a business telephone number.

33.     Plaintiff's personal cellular telephone number ending in 4604 has been registered on the National Do-Not-Call Registry since December 3, 2007.

34.     Plaintiff registered his phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls. The telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

35.     **Call 1:** On September 16, 2022, at 12:46 PM, Plaintiff received a missed phone call which displayed 206-359-3787 on Plaintiff's caller identification.

36.     **Call 2:** On September 19, 2022, at 10:22 AM, Plaintiff received a missed phone call which displayed 206-424-4239 on Plaintiff's caller identification.

7

**37.**     **Call 3:**  On September 19, 2022, at 11:24 AM, Plaintiff received a phone call displaying 206-359-3787 on Plaintiff's caller identification.

**38.**     Upon answering the call, Plaintiff was solicited for credit card "debt elimination."  The representative did not properly identify themself or the company on whose behalf the call was being placed.  The call dropped before Plaintiff was able to complete the call and find out the identity of the anonymous solicitors.

**39.**     **Call 4**:  On September 21, 2022, Plaintiff received a phone call that displayed 206-424-4239 on the caller identification.  Plaintiff answered the phone and was solicited for credit card "debt elimination."  The representative did not properly identify themself or the company on whose behalf the call was placed.  The call dropped before Plaintiff was able to complete the call and find out the identify of the anonymous solicitors.

**40.**     Plaintiff did not give the Defendants permission to call Plaintiff in the future on any of the first four phone calls.

**41.**     **Call 5**:  On October 17, 2022, at 10:53 AM, Plaintiff received a phone call that displayed 206-424-4241 on the caller identification.

**42.**     Upon answering the phone call the representative stated, "My name is Richard.  I am just giving you a quick call from 'Financial Relief.'"  This was a misidentification of the name of the company as "Financial Relief" is not the name of the company who called Plaintiff.

**43.**     Defendants instruct their solicitors not to reveal their true identity and say they are calling from "Financial Relief" or other false names in order to hide their true identity and duck liability for violating the TCPA.

**44.**     **Call 5:**  On April 21, 2022 at 8:29 AM, Plaintiff received a missed call from phone number (929) 334-4394.

8

**45.**     In order to confirm the caller's identity and his company's information, Plaintiff feigned interest in Defendants' telemarketing pitch.

**46.**     "Richard" continued his sales pitch to Plaintiff without ever disclosing the true identity of his company or on whose behalf the call had been placed.

**47.**     "Richard" eventually told Plaintiff "Brandon, I just got you qualified so I can have you speak to one of our specialists…if you hear a prompt or a beep that's me connecting you to the specialist." The representative then transferred Plaintiff to another representative.

**48.**     Plaintiff was transferred to another representative who answered the phone by stating "Good afternoon, my name's "Aliciana." "Aliciana" continued by saying "We are a debt resolution program slash credit repair company."

**49.**     "Aliciana" did not accurately identify the name of the company for whom she worked on whose behalf the calls were being placed. This necessitated Plaintiff continuing the phone call in order to determine who had placed the anonymous phone call. At no time did any of the representatives with whom Plaintiff spoke reveal the calls were being made by, or on behalf of, Defendants Jumpstart, Seigler, A&S, or Smith.

**50.**     **Call 6**: On October 17, 2022, at 11:10 AM, Plaintiff received an automated text message to his phone from phone number 832-861-7655 that contained a ClixSign link to the contract from the Defendants. Defendants did not obtain Plaintiff's express written consent prior to having the auto-generated text message delivered to his cell phone.

**51.**     Plaintiff clicked the link and signed the contract for the sole purpose of being able to download a copy of the contract and determine who was behind the anonymous phone calls.

**52.**     Plaintiff only determined the identity of the anonymous callers when he received and examined the contract and retainer agreement.

9

**53.**     On October 21, 2022, Plaintiff emailed a draft Complaint to Defendants A&S and Smith alerting them of the TCPA violations.

**54.**     On October 26, 2022, Defendant Smith called Plaintiff to "discuss" the issue. Plaintiff answered the phone with "hello." Defendant Smith's first words to Plaintiff were "You're a piece of shit." Smith was completely belligerent toward Plaintiff and repeatedly called Plaintiff an "extortionist." Plaintiff eventually got tired of the insults and hung up the phone.

**55.**     On October 26, 2022, Defendant Smith immediately called Plaintiff back and again began insulting Plaintiff and calling Plaintiff an extortionist. Plaintiff asked Defendant Smith why he had called him back to insult Plaintiff. Defendant Smith then informed Plaintiff his firm was withdrawing from the agreement and would not represent Plaintiff. Defendant Smith then began hurling new insults at Plaintiff.

**56.**     During these phone calls Defendant Smith called Plaintiff an "extortionist" at least 10 times. Smith is an attorney who apparently has a problem with citizens exercising rights that were granted by bills duly passed by the Congress of the United States and signed into law by the President of the United States.

**57.**     Defendants Smith and A&S violated the American Bar Association and Okla. Stat. tit. 5A § 7.3 prohibitions on direct solicitation of potential consumers with whom no previous relationship existed.

**58.**     All of the calls as alleged in this action, were initiated using the spoofed caller IDs and were made by Defendants and/or their agents for the purposes of promoting Defendants' debt relief services to Plaintiff.

**59.**     The following is a table detailing the telephone calls sent by Defendant to the Plaintiff's cell phone number:

TABLE A:

| Call: | Date: | Caller ID: | Time: | Outcome: | Notes: |
|---|---|---|---|---|---|
| 1 | 09/16/2022 | 206-359-3787 | 12:46 PM | Missed Call | |
| 2 | 09/19/2022 | 206-424-4239 | 10:22 AM | Missed call | |
| 3 | 09/19/2022 | 206-359-3787 | 11:24 AM | 1 min call | Debt relief call. Hung up |
| 4 | 09/21/2022 | 206-424-4239 | 9:02 AM | 4 min 11 Sec | Call dropped during transfer |
| 5 | 10/17/2022 | 206-424-4241 | 10:53 AM | 18 min 49 sec | Sent contract |
| 6 | 01/03/2022 | 832-861-7655 | 11:10 AM | Text message | Automated text message with contract link |

**60.**      Plaintiff was not interested in Defendants' debt relief services but was forced to feign

interest in order to determine who was behind the anonymous phone calls.

**61.**      Upon information and belief, Defendants used an automated dialer that used a random or

sequential number generator to send automated texts to Plaintiff's cell phone.

**62.**      On October 30, 2022, Plaintiff conducted a search for Defendants on

https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, and Defendants do not have a

solicitation registration certificate on file with the Texas Secretary of State as required to make

telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

**63.**      Defendants did not have Plaintiff's prior express written consent to make any of these

telemarketing calls.

**64.**      Prior to these unsolicited telephone communications, Plaintiff has never done any

business with Defendants, and Plaintiff never provided Defendants with his cellular telephone

number.

**65.**      To the extent, Defendants contend that they obtained consent or agreement from Plaintiff

for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that

such records be maintained. In any event, consent is an affirmative defense under the TCPA, this

defense is unavailable unless Defendants can show that they had prior express consent in writing,

and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2),

including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff.

**66.**     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**67.**     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Verizon as a cellular telephone number and is used for personal purposes.

**68.**     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**69.**     Defendants are not an organization exempt from the TCPA.

**70.**     Defendants' calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

**71.**     Defendants' calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

**72.**     In summary, Plaintiff received at least six (6) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list. One (1) of the calls (Call # 6) was sent via an ATDS.

### VICARIOUS LIABILITY OF DEFENDANTS A&S and SMITH

**73.**     Defendants A&S and Smith are vicariously liable for the telemarketing calls that generated the lead for them.

**74.**     There is a direct linear link between the phone calls Plaintiff received and the contract Plaintiff received that listed Defendant A&S and Smith as the beneficiaries of the phone calls.

**75.** The FCC is tasked with promulgating the rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

**76.** The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

**77.** The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

**78.** The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were judgment
> proof, unidentifiable, or located outside the United States, as is often the
> case. Even where third-party telemarketers are identifiable, solvent, and
> amenable to judgment limiting liability to the telemarketer that physically
> places the call would make enforcement in many cases substantially more
> expensive and less efficient, since consumers (or law enforcement agencies)
> would be required to sue each marketer separately in order to obtain
> effective relief. As the FTC noted, because sellers may have thousands of
> independent marketers, suing one or a few of them is unlikely to make a
> substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

**79.** More specifically, *Dish* held that, even in the absence of evidence of a formal

13

contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

**80.**     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

**81.**     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

**82.**     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

**83.**     Defendants A&S and Smith are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

**84.**     Defendant A&S and Smith are prohibited from engaging in the direct solicitation of prospective clients with whom they do not have a prior existing relationship. A&S and Smith are barred from conducting solicitation by both Oklahoma state statute and the American Bar Association.

**85.**     Defendants A&S and Smith either hired Defendant Jumpstart or entered into a contractual agreement Jumpstart whereby Jumpstart would refer clients to Defendants A&S and Smith in violation of the American Bar Association rules prohibiting solicitation. A&S and Smith are violating bar association rules for economic profit and failure to hold them vicariously

14

liable will undermine the bar association rules against solicitation.

**86.** Defendants A&S and Smith instructed Defendant Jumpstart on which states to target with phone calls and provided the minimum debt and income requirement to qualify for the program.

**87.** Defendants A&S and Smith knowingly and actively accepts business referrals that originates through illegal telemarketing.

**88.** Defendants A&S and Smith knew, or reasonably should have known, that Defendant Jumpstart was violating the TCPA on their behalf, but failed to take effective measures within their power to force Jumpstart to cease that conduct.

**89.** By hiring a company to make calls on their behalf, Defendant A&S "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

**90.** Defendants A&S and Smith maintained interim control over the actions of Defendant Jumpstart.

**91.** Defendants A&S and Smith had absolute control over whether, and under what circumstances, they would accept a customer from Defendant Jumpstart.

**92.** Defendants A&S and Smith had day-to-day control over the actions of Defendant Jumpstart, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant A&S and the ability to require them to respect the National Do Not Call Registry.

**93.** Defendants A&S and Smith gave interim instructions to Defendant Jumpstart by providing lead qualifying instructions and lead volume limits.

**94.** Defendants A&S and Smith supplied Defendant Jumpstart with apparent authority to make the calls at issue in this Complaint.

15

**95.** Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

**96.** A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

**97.** Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**98.** Defendant A&S and Defendant Smith are the liable parties as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant Jumpstart solicited Plaintiff for debt relief services

**DEFENDANTS DENNIS SMITH and JACK SEIGLER ARE PERSONALLY LIABLE**

**99.** Mr. Smith and Mr. Seigler are personally liable under the "participation theory" of liability because they had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

**100.**    Mr. Smith knew of Defendant A&S's TCPA violations, and specifically directed employees and/or agents of A&S to make those violations despite being aware of the prohibition of direct telephonic solicitation of potential clients with whom no preexisting prior business relationship existed.

**101.**    Mr. Seigler knew of Defendant Jumpstart's TCPA violations, and specifically directed employees and/or agents of Jumpstart to continue making those violations.

**102.**    Mr. Smith authorized and oversaw each of A&S's telemarketing processes and calls which were made on behalf of A&S.

**103.**    Mr. Seigler authorized and oversaw each of Jumpstart's telemarketing processes and calls which were made on behalf of Jumpstart.

**104.**    Mr. Smith and Mr. Seigler knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls were sent, and despite this fact, Mr. Smith and Mr. Seigler made the decision to direct their agents to call Plaintiff's cell phone number without his prior express written consent.

**105.**    Mr. Smith makes the day-to-day decisions for A&S.

**106.**    Mr. Seigler makes the day-to-day decisions for Jumpstart.

**107.**    Mr. Smith and Mr. Seigler made the decision to target Texas telephone numbers for telemarketing purposes using automated telemarketing calls, including calls to Plaintiff's number.

**108.**    Furthermore, Mr. Smith is also personally liable because he was responsible for ensuring A&S's agents and/or employees do not solicit consumers with whom no prior business relationship existed.

**109.**    "If the officer directly participated in or authorized the statutory violation, even though

17

acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

**110.** The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

**111.** Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for

all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d
892 (W.D. Tex. 2001)

**112.**    The Same Court held that corporate officers were also personally liable for DTPA
violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct.....For the
> same reasons discussed in finding the individual defendants personally liable under the
> TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex.
> Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate
> officer in DTPA misrepresentation claim, based on general rule that "a corporate agent
> knowingly participating in a tortious of fraudulent act may be held individually liable,
> even though he performed the act as an agent for the corporation......Accordingly, the
> Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are
> jointly and severally liable for $6,000 in damages for their violations of the DTPA."
> *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001

**113.**    At all times material to the Complaint, acting alone or in concert with others, Defendant

Smith has formulated, directed, controlled, had the authority to control, or participated in the acts

and practices of A&S including the acts or practices set forth in this Complaint.

**114.**    At all times material to the Complaint, acting alone or in concert with others, Defendant

Seigler has formulated, directed, controlled, had the authority to control, or participated in the

acts and practices of Jumpstart including the acts or practices set forth in this Complaint

**115.**    Defendant Smith is the founder and principal member and operator of A&S, controls the

day-to-day operations of A&S, and directed their employees, agents, salespersons, and solicitors

to make TCPA-violating phone calls and to solicit debt relief services.

**116.**    Defendant Seigler is the founder and principal member and operator of Jumpstart,

controls the day-to-day operations of Jumpstart, and directed their employees, agents,

salespersons, and solicitors to make TCPA-violating phone calls and to solicit debt relief services

117.    Defendant Smith approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for A&S's financial benefit.

118.    Defendant Seigler approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for Jumpstart's financial benefit

119.    Defendant Smtih and Defendant Seigler knowingly and willfully ignores the TCPA.

120.    Defendant Smtih and Defendant Seigler are not merely bystanders.  They are the mastermind that schemed, planned, directed, initiated, and controlled illegal behavior.

121.    Defendant Smith is well aware this conduct violated the TCPA and Tex. DPTA and refused to alter the behavior. Mr. Smith is the principal manager of A&S and the only person with the power to make unlawful behavior stop.  Yet, he has taken no steps to stop the behavior because the behavior benefits them financially.  Defendant Smith breaks the law with his eyes and pocketbooks wide open.

122.    Defendant Seigler is well aware this conduct violated the TCPA and Tex. DPTA and refused to alter the behavior. Mr. Seigler is the principal manager of Jumpstart and the only person with the power to make unlawful behavior stop.  Yet, he has taken no steps to stop the behavior because the behavior benefits them financially.  Defendant Seigler breaks the law with his eyes and pocketbooks wide open.

123.    Defendants Smith and A&S have operated as a common enterprise while engaging in deceptive acts and practices and violations of law alleged herein.  Defendant Smith has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of A&S that constitutes a common enterprise.

124. Defendants Seigler and Jumpstart have operated as a common enterprise while engaging in deceptive acts and practices and violations of law alleged herein. Defendant Seigler has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Jumpstart that constitutes a common enterprise

125. Defendant Smith and Defendant A&S should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

126. Defendant Seigler and Defendant Jumpstart should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct

127. Defendant Smith should be held liable because to do otherwise would simply allow him to simply dissolve Defendant A&S and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

128. Defendant Seigler should be held liable because to do otherwise would simply allow him to simply dissolve Defendant Jumpstart and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

129. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

130. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's

21

rights and interests in Plaintiff's cellular telephone.

**131.** Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**132.** Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

**133.** Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's Cell Phone is a Residential Number

**134.** The calls were to Plaintiff's cellular phone ending in 4604 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

**135.** The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 U.S.C. § 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e).

**136.**     The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 U.S.C. § 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

**137.**     The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

**138.**     Under Texas Business and Commerce Code § 302.302, Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### CAUSES OF ACTION

### I.     FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

**139.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**140.**     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

**141.**     Plaintiff was statutorily damaged at least one (1) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

**142.**     Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**143.**   Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.   SECOND CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

**144.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**145.**   Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**146.**   Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

**147.**   Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

**148.**   As a result of Defendants' and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**149.**   Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing

robocalls to cellular telephone numbers without the prior express written consent of the called party.

### III.    THIRD CLAIM FOR RELIEF:

### (Violations of The Texas Business and Commerce Code 305.053)

**150.**    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**151.**    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone numbers without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

**152.**    Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**.

**153.**    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

### IV.    FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

**154.**    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

**155.**    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-

registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

**156.** Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

**157.** Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. **Texas Business and Commerce Code 302.302(d)**.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for 1 call.

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for 6 calls.

F.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

26

G.      An award of $5,000 in statutory damages arising from violations of the Texas

Business and Commerce code 302.101.

H.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

I.      An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law

and equity

J.      Such further relief as the Court deems necessary, just, and proper.


October 31, 2022                          Respectfully submitted,


                                          Brandon Callier
                                          Plaintiff, Pro Se
                                          6336 Franklin Trail
                                          El Paso, TX 79912
                                          915-383-4604


## I.      Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: October 31, 2022


                                          Brandon Callier
                                          Plaintiff, Pro Se
                                          6336 Franklin Trail
                                          El Paso, TX 79912
                                          915-383-4604